**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| JOSE ALEMAN, | : | |
| | : | |
| Petitioner, | : | Civ. No. 18-14040 (RMB) |
| | : | |
| v. | : | |
| | : | |
| BRUCE DAVIS, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |

BUMB, District Judge

### I.    INTRODUCTION

Petitioner, Jose Aleman ("Petitioner" or "Aleman), is a state prisoner proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Dkt. No. 5.) For the following reasons, Petitioner's amended habeas petition is denied and a certificate of appealability shall not issue.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

The New Jersey Superior Court, Appellate Division, summarized the background giving rise to Petitioner's criminal convictions as follows on direct appeal:

> As a result of a shooting occurring in Atlantic City on April 24, 2008, defendant was charged by an Atlantic County Grand Jury in a five-count indictment, No. 08–08–1998B, with first-degree murder of Yu by purposely or knowingly causing his death or inflicting serious bodily injury resulting in death, *N.J.S.A.* 2C:11–3(a)(1) and (2) (count one); second-degree unlawful possession of a .38 caliber handgun with a purpose to use it unlawfully, *N.J.S.A.* 2C:39–4a (count two); second-degree unlawful possession of a .38 caliber handgun without a permit to carry as provided by *N.J.S.A.* 2C:58–4, *N.J.S.A.* 2C:39–5b (count three); fourth-degree recklessly causing bodily injury to

Smith with a deadly weapon, *N.J.S.A.* 2C:12–1b(3) (count four); and second-degree possession of a .38 caliber handgun by a person previously convicted of possession with intent to distribute CDS, *N.J.S.A.* 2C:39–7 (count five).

Following a five-day trial, defendant was convicted by a jury on September 8, 2010 of counts one through four. A bifurcated jury trial was then conducted on count five, after which defendant was convicted of that count. Defendant filed a motion for a new trial, which was denied. Judge James Isman sentenced defendant on October 29, 2010 to an aggregate custodial term of fifty and one-half years with thirty-nine years parole ineligibility, and imposed mandatory fees, fines, and penalties.

. . . .

At trial, the State presented the testimony of Smith, several law enforcement officers and expert witnesses, and several bystanders who witnessed or heard the shooting. The State also presented a surveillance videotape of the parking lot that depicted the murder in its entirety and an audio/video recording of defendant's confession. The defense presented the testimony of his landlord; a close friend, Santos Torres; and defendant testified on his own behalf.

Defendant admitted on the stand that he fatally shot Yu twice, once in the abdomen and once in the head. In a recorded interview conducted by Investigator Cintron that was played for the jury, which was repeated by defendant at trial, defendant stated he shot Yu because the victim would not repay him $13,000, comprised of a $10,000 loan defendant made to him in 2006 and $3000 from work defendant did for Yu. His defense was that he acted in the heat of passion and was provoked because Yu withheld defendant's money and would not return his calls when he desperately needed money for cancer treatment, and this made the crime passion/provocation manslaughter rather than first-degree murder.

Defendant testified he was walking towards his house on South Tennessee Avenue in Atlantic City when he saw Yu drive his truck and park it in a lot nearby. Defendant walked over to his house and retrieved a gun he had recently purchased, loaded it with six bullets, and put it in his backpack. Defendant returned to the parking lot where Smith and Yu were standing. About

five minutes had passed from when defendant first observed
Yu's vehicle until the time he returned to the parking lot.

Defendant hid for about eight minutes, waiting for a woman
with whom Yu was speaking to leave. He then walked up to
Yu, had a short conversation with him, and with a "calm"
demeanor, pulled out the revolver, pointed it at Yu, and shot
him in the abdomen. The bullet entered on the right side of his
torso and exited through his right flank. Yu fell to the ground.

Defendant then walked over to Yu, pointed the gun at his head,
and fired two more shots. One bullet struck Yu at the right rear
of his skull, entered downward and traveled through his brain
before coming to rest in his skull. Dr. Parks testified that this
shot was fatal. Another bullet was lodged in the asphalt next to
Yu's head. Defendant placed the gun on a gas meter and asked
witnesses to call the police.

Smith testified that he was with Yu when Yu was shot, and one
of the bullets grazed his right arm and then struck his car. He
had a scar on his arm as a result. He discovered the bullet that
struck his car later that day.

In addition to the audio/video recording of the interview,
Captain Fair and Detective Jasiecki testified to defendant's
calm, cool demeanor, both at the scene of the crime and the
interview later that day. The surveillance video of the shooting
was shown to the jury.

*State v. Aleman*, No. A-5010-10T1, 2012 WL 6061698, at *1–2 (N.J. Super. Ct. App. Div.

Dec. 7, 2012) (footnote omitted). The Appellate Division affirmed Petitioner's judgment of

conviction on direct appeal. *See id.* at *7. The New Jersey Supreme Court denied

Petitioner's petition for certification. *See State v. Aleman*, 73 A.3d 511 (N.J. 2013).

Petitioner subsequently filed a post-conviction relief ("PCR") petition with the New

Jersey Superior Court. (*See* Dkt. Nos. 10-13, 10-14 & 10-15.) After oral argument, the

Superior Court denied the PCR petition via an oral decision and written order without

conducting an evidentiary hearing. (*See* Dkt. Nos. 10-6 at 8-14; 10-18.) The Appellate

Division on appeal reversed so that an evidentiary hearing could be conducted. *See State v. Aleman*, A-3860-14T1, 2016 WL 3369514 (N.J. Sup. Ct. App. Div. June 20, 2016).

Thereafter, on March 29, 2017, the Superior Court conducted a hearing on Petitioner's PCR petition. (*See* Dkt. No. 10-7.) The prosecutor who prosecuted Petitioner's criminal proceeding testified. (*See id.* at 7-32.) Petitioner declined to testify. (*See id.* at 33.) The Superior Court denied Petitioner's PCR petition in an oral opinion and subsequent written order. (*See id*. at 35-38; *see also* Dkt. No. 10-25.)

On appeal, the Appellate Division affirmed the Superior Court's denial of Petitioner's PCR petition for the reasons expressed by the Superior Court Judge in her oral opinion. *See State v. Aleman*, Dkt. No. A-4222-16T3, 2018 WL 1720925 (N.J. Sup. Ct. App. Div. Apr. 10, 2018). The New Jersey Supreme Court then denied certification. *See State v. Aleman*, 186 A.3d 901 (N.J. 2018).

In September, 2018, Petitioner filed his original habeas petition in this Court. (*See* Dkt. No. 1.) However, Petitioner failed to sign the original habeas petition so this matter was administratively terminated. (*See* Dkt. No. 3.) Thereafter, Petitioner submitted a signed amended habeas petition. (*See* Dkt. No. 5.) The claims Petitioner raises in his amended habeas petition are as follows:

1. The verdict sheet and some of the jury instructions failed to properly assign the burden of disproving passion/provocation to the state ("Claim I")

2. But for trial counsel's ineffectiveness, Petitioner's statement would have been suppressed ("Claim II")

3.   Petitioner was denied ineffective assistance of counsel ("Claim III")[1]

Respondents filed a response in opposition to the amended habeas petition. (*See* Dkt. No. 10.) Petitioner did not file a reply. On February 25, 2022, this matter was reassigned to the undersigned. (*See* Dkt. No. 11.)

III.   LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also*, *Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

---

[1] Petitioner labels these three claims in his amended habeas petition as grounds 1, 3 and 6. The amended habeas petition does not include any other specific claims. In grounds 2, 4, 5, 7, 8, 9 and 10, Petitioner simply states that he "will rely upon the facts as set forth in the state courts below." (*See* Dkt. No. 1 at 13, 15, 16, 18, 19, 20, 21.) Petitioner did not file a reply brief contesting Respondents' position that the only claims raised in Petitioner's amended habeas petition are those listed under grounds 1, 3 and 6. Given these circumstances, this Court will only analyze the express claims Petitioner raises as listed in grounds 1, 3 and 6 of his amended habeas petition as this Court construes the amended habeas petition as containing no other claims.

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Furthermore, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

IV.   DISCUSSION

A.   Claim I

In Claim I, Petitioner argues the trial court's jury instructions and the verdict sheet failed to assign the burden of disproving passion/provocation to the state. The last reasoned decision on this claim was from the Appellate Division on Petitioner's direct appeal which analyzed this claim as follows:

> The parties and judge agreed that passion/provocation manslaughter should be submitted to the jury as an alternative to a murder verdict. Defendant acknowledges the judge's instructions were "straight from the model jury charge [.]" *See Model Jury Charges (Criminal)*, 2C:11–4a, b(1), b(2) (2011). He argues, however, as plain error warranting reversal, that the

judge's statement prior to these instructions and the verdict
sheet did not correctly designate the State's burden of
disproving the elements of passion/provocation and confused
the jury.

The challenged statement is as follows:

> So right away, you can see the difference between
> the two, is that phrase in the heat of passion
> resulting from a reasonable provocation.
> Everybody see that? That's why you possibly
> could not find both. You could find either *or
> neither,* but not both. *If you are to find neither was
> proven,* beyond a reasonable doubt, then you
> would go on to consider whether the killing was
> done recklessly[.]

> [(Emphasis added).]

The challenged portion of the verdict form description of
passion/provocation reads:

> Whether the Defendant ... did cause the death ...
> either purposely or knowingly and did so in the
> heat of passion resulting from a reasonable
> provocation, (*Passion/Provocation Manslaughter* ),
> how do you find the Defendant?

Defendant urges that the language in this initial charge and the
verdict form could have led the jury to believe a positive finding
of passion/provocation, as opposed to a reasonable doubt as to
whether the State had disproved it, was the necessary finding
for a verdict on passion/provocation manslaughter. Defendant
emphasizes that nowhere in this part of the charge or the
verdict form is the jury told that purposeful/knowing killing,
plus a mere *doubt* about passion/provocation, should lead to a
verdict for passion/provocation manslaughter.

"Pursuant to *Rule* 1:7–2, defendant's failure to object [to a jury
instruction] constitutes a waiver of his right to challenge that
instruction on appeal." *State v. Docaj,* 407 *N.J. Super.* 352, 362
(App. Div.), *certif. denied,* 200 *N.J.* 370 (2009). "If the defendant
does not object to the charge at the time it is given, there is a
presumption that the charge was not error and was unlikely to
prejudice the defendant's case." *State v. Singleton,* 211 *N.J.* 157,
182 (2012). "[D]efects in the verdict sheet are reviewed on

appeal under the same 'unjust result' standard of *Rule* 2:10–2 that governs errors in the jury charge." *State v. Galicia,* 210 *N.J.* 364, 388 (2012).

We assume for the sake of argument there was "a rational basis in the evidence" to charge passion/provocation manslaughter. *See State v. Garron,* 177 *N.J.* 147, 180 n. 5 (2003), *cert. denied,* 540 *U.S.* 1160, 124 *S. Ct.* 1169, 157 *L. Ed. 2d* 1204 (2004) ("If counsel requests a lesser-included charge, the trial court must give that charge if there is a rational basis in the record to do so."). *See also State v. Mauricio,* 117 *N.J.* 402, 411 (1990) (enumerating the four elements of passion/provocation: "the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying"); *Galicia, supra,* 210 *N.J.* at 389 (holding that any error in charging the jury regarding passion/provocation manslaughter, when that charge "had no foundation in the evidence[,]" constitutes harmless error and is incapable of depriving a defendant of a fair trial).

Defense counsel neither objected to the charge nor the verdict form. We are satisfied there was no error, but at most, any error would be harmless. When the jury instructions are considered in their totality, *see State v. Koskovich,* 168 *N.J.* 448, 529 (2001), it is clear the judge never advised the jury that it must make a "positive finding" of passion/provocation but, rather, clearly and accurately conveyed to the jury the State's burden to disprove the elements of passion/provocation in order to find defendant guilty of first-degree murder. Nor could a reasonable jury have drawn such an inference from these instructions. Here, contrary to *State v. Grunow,* 102 *N.J.* 133, 134, 144–45 (1986), the overall charge expressly conveyed to the jury that the State had to prove beyond a reasonable doubt every fact necessary to constitute the crime of murder, including the absence of reasonable provocation, and defendant had no burden to prove the presence of reasonable provocation.

The sample verdict sheet provided by the model jury charges does not contain the phrase that the State must disprove at least one of factors of passion/provocation manslaughter beyond a reasonable doubt. *Model Jury Charges (Criminal), supra,* 2C:11–4a, b(1), b(2). The jury never requested clarification and gave no indication to the court whatsoever that it was confused by the verdict form and did not understand the court's instructions

regarding the legal standard and the State's burden to disprove passion/provocation. Nevertheless, any error would be deemed harmless. *See Galicia, supra,* 210 *N.J.* at 387 ("When there is an error in a verdict sheet but the trial court's charge has clarified the legal standard for the jury to follow, the error may be deemed harmless.").

Even giving defendant the widest latitude, due to the "near overwhelming evidence of [defendant's] guilt[,]" defendant's asserted errors were not "clearly capable of producing an unjust result." *State v. Marrero,* 148 *N.J.* 469, 497 (1997) (internal quotation marks omitted). Defendant admitted that after he saw Yu's vehicle, he returned to his home, retrieved and loaded his gun, and returned to the scene. He then hid for about eight minutes until a bystander left, approached Yu and engaged him in a brief conversation, after which he calmly shot Yu in the abdomen. Defendant then walked over to Yu, who had fallen to the ground, and executed him. These actions clearly demonstrate that defendant did not act under the stress of passion/provocation. The jury also watched the surveillance video and heard defendant's confession, in which he told the investigator, among other things, "[e]ven if he did [ ] give me a million dollar[s] I would shoot the man."

*Aleman*, 2012 WL 6061698, at *2–4.

Habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights. *See Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (same). Furthermore, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Duncan*, 256 F.3d at 203 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). An error in the jury instructions is not ground for habeas relief if the error is harmless. *See Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014) (citing *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996)). An error is

harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Upon review of the jury instructions and verdict form, this Court finds that the denial of this claim was not contrary to nor an unreasonable application of clearly established federal law, nor was the denial based on an unreasonable determination of the facts. The Appellate Division properly noted the relevant law and applied it correctly, explaining that the jury instructions as a whole and the verdict form were not improper. For example, the trial court instructed the jury as follows:

> Now, for murder, the third and final element the State must prove is that the Defendant did not act in the heat of passion resulting from a reasonable provocation. Passion/provocation manslaughter as it is called, is a death caused purposely or knowingly, same mens rea or state of mind as murder, but it's committed in the heat of passion resulting from a reasonable provocation.

(*See* Dkt. No. 10-4 at 99-100.) Thereafter, the trial court instructed the jury:

> So if you determine that the State has, proven beyond a reasonable doubt, that there was not adequate provocation or that the provocation did not actually impassion the Defendant or that the Defendant had a reasonable time to cool off or that the Defendant actually cooled off and in addition to proving one of those four factors, you determine that the State has proven, beyond a reasonable doubt, that the Defendant either purposely or knowingly caused the death or serious bodily injury resulting in the death of Pong Yu, then you should find the Defendant guilty of murder.
>
> But if, on the other hand, you determine that the State has not disproved at least one of the factors of passion/provocation manslaughter, beyond a reasonable doubt, but that the State has proven, beyond a reasonable doubt that the Defendant either purposely or knowingly caused the death of or serious bodily injury resulting in the death of Pong Yu, then you

> should find the Defendant guilty of passion/provocation
> manslaughter.
>
> If, however, you feel the State has failed to prove, beyond a
> reasonable doubt, that the Defendant acted purposely or
> knowingly in causing the death or serious bodily injury
> resulting in death, then you must find the Defendant not guilty
> of murder and passion/provocation manslaughter and consider
> whether the Defendant should be convicted of the crime of
> aggravated manslaughter.

(Dkt. No. 10-4 at 141-42.) As noted by the state court, these instructions, contrary to

Petitioner's assertions, properly levied the burden to the State to disprove the elements of

passion/provocation. Furthermore, it aptly noted even if the jury instructions were

improper, given the strong evidence produced at trial against Petitioner to convict him of

murder as opposed to passion/provocation manslaughter, any error with a particular

instruction would have been harmless.

Petitioner's claim on the verdict sheet also lacks merit as it did not improperly

change the State's burden on passion/provocation. Indeed, as noted by the Appellate

Division, the verdict form did nothing of the sort. Accordingly, Petitioner is not entitled to

habeas relief on Claim I.

B. Claim II

In Claim II, Petitioner argues that but for trial counsel's ineffectiveness, Petitioner's

statement to police would have been suppressed. (*See* Dkt. No. 5 at 14.) Petitioner's

amended habeas petition gives no further details as to the reasons why his statement to the

police should have been suppressed. (*See* Dkt. No. 1 at 14.) However, Petitioner does

indicate that he is relying on the facts set forth in the state court with respect to this claim.

(*See id.*) Petitioner raised Claim II in his initial PCR petition dated October 24, 2013. (*See*

Dkt. No. 10-13 at 14). In that state court filing, Petitioner argued that counsel should have

moved to suppress his statement because it was made without counsel present and without a valid waiver of his *Miranda* rights. (*See id.*)

The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires a petitioner to show prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111-12 (internal quotation marks and citations omitted).

As noted above, Petitioner raised Claim II in his initial PCR petition dated October 24, 2013. (*See* Dkt. No. 10-13 at 14). The Superior Court denied Petitioner's PCR petition from the bench on February 5, 2015. (*See* Dkt. No. 10-6.) While the Superior Court did not expressly discuss this claim, it did note that Petitioner failed to show from his submissions a prima facie case of ineffective assistance of counsel. (*See id.* at 13.) Petitioner did not though raise Claim II in his appeal to the Appellate Division. (*See* Dkt. No. 10-19.) Instead, he only argued that the case should be remanded for an evidentiary hearing on his claim that trial counsel was ineffective in failing to communicate a plea offer to him. (*See id.*) Petitioner was successful on that claim and the Appellate Division remanded the matter back to the Superior Court. *See Aleman*, 2016 WL 3369514. Similarly, Petitioner did not raise this claim of trial counsel's ineffectiveness for failing to get his statement suppressed on appeal to the Appellate Division after the remand to the Superior Court was again appealed to the

Appellate Division after it was denied. (*See* Dkt. No. 10-26.) Accordingly, this Court must analyze whether Petitioner has exhausted Claim II.

To properly exhaust a claim, a petitioner must raise the claim before all three levels of the New Jersey state courts, not just before the New Jersey Superior Court. *See Jimenez v. Riordan,* No. 14–4349, 2014 WL 4244226, at *2 (D.N.J. Aug. 26, 2014) (citing *Moore v. DeYoung,* 515 F.2d 437, 449 (3d Cir. 1975)) ("The proper procedure for Petitioner is to exhaust his constitutional claims before all three levels of the New Jersey courts and, if he is unsuccessful, to thereafter present them to this Court in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254."). In this case, Petitioner only raised Claim II before the Superior Court, thus, it is clearly unexhausted. Nevertheless, this Court can still deny Claim II on the merits, provided it is not a "colorable" claim. *See Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 515–15 (3d Cir. 1997) (construing 28 U.S.C. § 2254(b)(2))); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Counsel is not deemed ineffective for failing to raise a meritless issue. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted). For the following reasons, because any motion to suppress Petitioner's statement would have been meritless, Petitioner is not entitled to federal habeas relief on Claim II.

With respect to whether a motion to suppress Petitioner's statement to police would have been successful, this Court must examine whether Petitioner was properly given and waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the United

States Supreme Court "held that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly, and intelligently.'" *Fahy v. Horn,* 516 F.3d 169, 194 (3d Cir. 2008) (quoting *Miranda,* 384 U.S. at 444). This inquiry has two dimensions, specifically:

> First, the relinquishment of the right must have been voluntary
> in the sense that it was the product of a free and deliberate
> choice rather than intimidation, coercion, or deception.
> Second, the waiver must have been made with a full awareness
> of both the nature of the right being abandoned and the
> consequences of the decision to abandon it. Only if the "totality
> of the circumstance surrounding the interrogation reveal both
> an uncoerced choice and the requisite level of comprehension
> may a court properly conclude that the *Miranda* rights have
> been waived.

*Moran v. Burbine,* 475 U.S. 412, 421 (1986). "The ultimate question in the voluntariness calculus is 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'" *Fahy,* 516 F.3d at 194 (quoting *Miller v. Fenton,* 474 U.S. 104, 112 (1985)).

At approximately 1:18 p.m., or shortly after the victim was shot and killed, Petitioner uttered the following at the crime scene to an Atlantic City police officer, "I shot him in the head because he owed me 10,000 dollars and I'm sick in the prostate." (*See* Dkt. No. 10-1 at 72-73, 74.) Ultimately, Petitioner was taken to the Atlantic County Prosecutor's Office Major Crimes Unit. (*See id.* at 133-34.) When he arrived, Petitioner was placed in a room which has audio and visual recording capabilities. (*See id.* at 134.) Prior to being administered his *Miranda* warnings, Petitioner's handcuffs were removed. (*See* Dkt. No. 10-9 at 46.) Petitioner stated he understood English, but was advised if he did not understand anything, he could say it in Spanish. (*See id.* at 46, 48.) Petitioner then was read and signed off on his *Miranda* waivers. (*See id.* at 46-48.) This included Petitioner stating he understood

he had the right to an attorney, but he waived that right. (*See id.* at 47-48.) The interview then began at 3:29 p.m. (*See id.* at 48.)

During the interview, Petitioner never raised his voice nor got upset. (*See* Dkt. No. 10-1 at 135-36.) The interview included a break and Petitioner was provided water when he requested it. (*See* Dkt. No. 10-9 at 81.) The interview concluded slightly less than two hours after it began, or at 5:26 p.m. (*See id.* at 85.)

Given these undisputed facts in the record, any proposed motion to suppress Petitioner's statement to police would have been denied as meritless. Petitioner was given his *Miranda* warnings and voluntarily waived his *Miranda* rights. Accordingly, counsel was not ineffective for failing to seek to suppress Petitioner's statements to police. Therefore, Petitioner fails to show he is entitled to relief on Claim II because it is not "colorable."

C. Claim III

In Claim III, Petitioner asserts in general terms that he was denied effective assistance of counsel. Beyond this general assertion of ineffectiveness, Petitioner provides no further supportive facts in his amended habeas petition, nor has he filed a reply brief that would assist this Court in determining precisely what ineffectiveness claim Petitioner is attempting to raise. However, Petitioner's amended habeas petition does indicate that he exhausted his state court remedies on Claim III. Therefore, this Court construes Claim III as claiming that counsel was ineffective in failing to communicate a fifteen-year plea offer from the State because this ineffectiveness claim was exhausted by Petitioner in state court.

The Appellate Division during the PCR proceedings ultimately denied this claim in 2018 for substantially the reasons given by the Superior Court after the claim was more thoroughly examined on remand. *See Aleman*, 2018 WL 1720925, at *2. Therefore, the last

reasoned decision on Claim III is from the Superior Court which decided this claim as

follows in its oral opinion:

> The Court has before it, as I started in the beginning of this
> matter to indicate, that this matter is before the Court on a
> remand by the Appellate Division, and the Appellate Division
> has pointed out, as helpfully pointed out by counsel when we
> opened this matter, remanded this matter for the Court to
> conduct an evidentiary hearing on a very narrow point, and the
> narrow point is to resolve the factual dispute between the
> defendant and the prosecutor on the question of whether a plea
> offer had been made.
>
> The Court's had before it the testimony today of Janet Gravitz,
> who is a Chief Assistant Prosecutor now assigned to the
> Juvenile Division of the Prosecutor's Office. The Court has had
> in evidence several pieces of evidence, all of which have been
> placed on the record previously.
>
> This Court has nothing before it other than proof by the State,
> by the testimony of Ms. Gravitz, whose testimony is wholly
> creditable and straight forward and also is also in accord wit~
> the documentary evidence presented today. The documentary
> evidence shows that the public defender at the time, Ms. Ingrid
> Sorensen, tried her best to get the State to consider an offer
> of ten years NERA, 85 percent. She indicates in her letter
> that Ms. Gravitz had spoken to her previously and Ms.
> Gravitz's first offer was life-do-30 years on a murder charge.
>
> The further evidence discloses that in accordance with a
> letter sent then to Ms. Sorensen, who continued to be the
> defendant's public defender, attorney, through some time in
> July of 2009 there is a letter admitted into evidence, S-3, in
> accord - which accords and supports Ms. Gravitz's
> testimony that the offer at that time was a first-degree
> aggravated manslaughter with a recommendation of not to
> exceed 24 years New Jersey state prison subject to the No
> Early Release Act.
>
> Further in this matter, and most convincingly to this Court,
> is the pre-trial memo that was submitted. At the time this
> case was before Judge Isman, and that pre-trial memo,
> which was admitted into evidence today, as S-6, clearly
> indicates that the plea offer, as of the date of that pre-trial

memo execution, was plead to aggravated manslaughter not to exceed 24 years.

There is no evidence before this Court other than the bald assertion of the defendant in this matter that the State at any time offered a plea to a crime for which the defendant would be permitted to plead and receive a sentence of 15 years. The evidence before the Court is that the last and final plea offer in this matter prior to going to trial was the plea to aggravated manslaughter not to exceed 24 years.

Therefore, the Court has considered what the Appellate Division has directed it to consider and to resolve the disputed issue as to whether there was a plea offer of 15 years, and the Court finds that there never was such a plea offer made in this case and, therefore, a further evidentiary hearing on the merits of defendant's ineffective as stance of counsel need not be granted.

And let me just place on the record some of the legal reasons for that. (Reading:)

> "The mere raising of a claim for PCR doesn't entitle the defendant to an evidentiary hearing. The trial court should" –

And that is the *Cummings* case. (Reading:)

> Rather, trial courts should grant evidentiary hearings only if the defendant has presented a *prima facie* claim of ineffective assistance, material issues of disputed fact lying outside the record, and whether a resolution of those issue necessitate a hearing."

This really was a hearing today to determine whether there should be a hearing. There are no,there - The defendant in this case has not presented a *prima facie* claim of ineffective assistance because there is no material and resolvable - there is no proof before this Court that a, an offer of 15 years was ever made. Therefore, his counsel could not be found to be ineffective.

(*See* Dkt. No. 10-7 at 35-38.)

19

The United States Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place during the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146. Accordingly, deficient performance occurs when counsel fails to communicate formal plea offers to the defendant. *See id.* at 146-47.

During the PCR hearing on remand, as outlined above, the Superior Court heard testimony from the prosecutor who prosecuted Petitioner's criminal case as to the nature of the plea negotiations. (*See id.* at 7-32.) As the record from that hearing indicates, there was never a plea offer of fifteen-years on the table. The Superior Court made this factual finding after hearing from the criminal case prosecutor and offering Petitioner the chance to testify, which he declined. Petitioner has failed to rebut this factual finding by the Superior Court by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan*, 256 F.3d at 196 (factual determinations of state trial and appellate courts are presumed to be correct). Accordingly, as there was never a fifteen-year plea offer, Petitioner fails to show that his trial counsel was ineffective for failing to present to him such an offer by the State. Thus, Claim III is denied.

V.       CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28

U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). This Court finds that a certificate of appealability shall not issue on any of the claims raised by Petitioner in his amended habeas petition.

VI.    CONCLUSION

For the reasons expressed in this opinion, Petitioner's amended habeas petition is denied and a certificate of appealability shall not issue. An appropriate order shall be entered.


DATED:  March 29, 2022                      s/ Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge